<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GUIDO BUSSINELLI, SCOTT CHERVEN, and KEVIN HEBERT,<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF MAHWAH; JAMES WYSOCKI, individually and in his official capacity; WARD DONIGIAN, individually and in his official capacity; DAVID MAY, individually and in his official capacity; ROBERT M. FERGUSON III, individually and in his official capacity; JANET ARIEMMA, individually and in her official capacity; KIM BOLAN , individually and in her official capacity MICHELLE CROWE PAZ, individually and in her official capacity; JONATHAN S. WONG, individually and in his official capacity; BEN KEZMARSKY, individually and in his official capacity; XYZ CORP., INC.; JOHN DOES (1-10); and JANE DOES (1-10),<br><br>Defendants. | Civil Action No. 23-21519<br><br>**OPINION**<br><br>August 12, 2024 |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendants' Township of Mahwah, James Wysocki, Ward Donigian, David May, Robert M. Ferguson III, Janet Ariemma, Kim Bolan, Michelle Crowe Paz, Jonathan S. Wong, and Ben Kezmarsky (collectively, "Defendants") Motion to Dismiss Guido Bussinelli, Scott Cherven, and Kevin Hebert's (together, "Plaintiffs") Complaint (ECF 1, "Compl."). (ECF 5, "MTD.") Plaintiffs opposed the motion. (ECF 9, "Opp.") Defendants filed a reply. (ECF 10, "Reply.") The Court has decided this motion upon the submissions of the

parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED**.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

This suit arises from a dispute over the appointment of a new Chief of Police for the Township of Mahwah. (*See* ECF 1, Compl.) Plaintiffs are current employees of the Township of Mahwah occupying various positions in the Mahwah Police Department (the "MPD"). (*Id.* ¶¶ 17-19.) Plaintiffs claim that they were subjected to a "sham interview process" that failed to consider their seniority, rank, and experience working in the MPD. (*Id.* ¶ 106, 147-48, 157.) Plaintiffs allege that they were rejected from serious consideration because of their close association with former Police Chiefs James Batelli and Stephen Jaffe and because of their contentious relationship with former coworker and now-Mayor of Mahwah James Wysocki, who ultimately appointed Lt. O'Hara, as Chief of Police. (*Id.* ¶¶ 71-74, 106, 114, 129.)

Plaintiff Bussinelli was first employed by the MPD as a Patrol Officer in November of 1995; he was later promoted to Detective, Detective Lieutenant, Captain, and most recently promoted to Executive Officer in June of 2022. (*Id.* ¶¶ 31, 34, 37, 40, 43.) Plaintiff Cherven was first employed by the MPD as a Patrol Officer in January of 1999; he was later promoted to Sergeant, Lieutenant, Administrative Lieutenant, and most recently promoted to Captain in July of 2022. (*Id.* ¶¶ 44, 47, 50, 53, 56.) Plaintiff Hebert was first employed by the MPD as a Patrol Officer in November of 1997; he was later promoted to Detective, Detective Sergeant, and most recently promoted to Detective Lieutenant in May of 2019. (*Id.* ¶¶ 57, 60, 63, 66.)

---

[1] The facts and procedural history are drawn from the Complaint (ECF 1, Compl.) and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the Complaint are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Defendant Wysocki began employment with the MPD as a Patrol Officer in 1985, ultimately retiring in December 2010. (*Id.* ¶ 69.) Wysocki was then elected as Councilman for the Township of Mahwah. (*See id.* ¶ 94-95.) Wysocki later became Mayor of the Township of Mahwah. (*See id.* ¶¶ 21, 96, 99.)

Plaintiffs worked alongside or in positions of authority over Wysocki at the MPD from 1995 to December 2010. (*Id.* ¶¶ 69 ,75.) During this time, the Chief of the MPD was James Batelli. (*Id.* ¶ 70.) Plaintiffs had a "close professional and personal association with Chief Batelli" apparently based on Batelli's "proactive approach to law enforcement." (*Id.* ¶¶ 74, 79.) Plaintiffs allege that Wysocki did not have a good relationship with Chief Batelli because of Wysocki's "poor performance as a Patrol Officer within the Department." (*Id.* ¶ 71.) There was a general division in the MPD between those associated with Batelli and those who disliked him. (*Id.* ¶¶ 73-74.) Plaintiffs had several "negative interactions" with Wysocki both during Wysocki's time with the MPD as well as after Wysocki's retirement.[2] (*Id.* ¶ 75.)

In 2019, Chief Batelli retired as MPD Chief of Police. (*Id.* ¶ 95.) Mahwah's then-mayor, Mayor Roth, subsequently appointed Captain Stephen Jaffe as Chief of Police. (*Id.* ¶ 96.) During Jaffe's appointment process, Wysocki complained that the Council should have had the opportunity to interview Chief of Police candidates. (*Id.*) During Jaffe's tenure, all three Plaintiffs were temporarily put in charge of the Department when Chief Jaffe was absent. (*Id.* ¶ 98.)

---

[2] In 2009, Cherven, as Wysocki's supervising officer, placed Wysocki on a Performance Improvement Plan which Wysocki complained was due to Cherven's association with Batelli. (*Id.* ¶¶ 76-77.) On another occasion, the Plaintiffs arrested a friend of Wysocki's for DWI, which Wysocki criticized. (*Id.* ¶ 84.) Plaintiffs also arrested this individual for a second DWI at a later date, again prompting a response from Wysocki. (*Id.* ¶ 86.) Plaintiffs were involved in arresting a Mahwah firefighter and "close personal friend" of Wysocki, and two Plaintiffs were involved in the arrest of a son of a Mahwah firefighter, both events which Wysocki commented on. (*Id.* ¶¶ 88-90.) In 2011, Bussinelli had a contentious interaction when investigating a complaint made by Wysocki. (*Id.* ¶ 91.) In 2014, Hebert and another officer apparently caught Wysocki in a "compromising position." (*Id.* ¶ 92.) In 2016, Wysocki was asked to remove his truck, which had a large sign negative to the then-mayor, from Mahwah Township property by Cherven. (*Id.* ¶ 94.) Wysocki claimed that this removal was because of Chevren's close alignment with Chief Batelli. (*Id.*)

On April 27, 2023, Chief Jaffe communicated his intention to retire effective July 1, 2023. (*Id.* ¶ 99.) Chief Jaffe endorsed Bussinelli and Cherven as suitable replacements for him and asked to provide further information about the two Plaintiffs during the hiring process. (*Id.* ¶ 100.) On May 2, Defendant Wysocki discussed appointing a new Chief of Police with Patrolman Travis Canning, where Wysocki asked if "Lt. O'Hara or Lt. Blondin would be well received as Chief of Police." (*Id.* ¶ 102.)

Defendant Wysocki listed the job posting for Chief of Police, noting that interviews would be conducted in June. (*Id.* ¶ 105.) Plaintiff Cherven was interviewed on June 6 by Defendants Wysocki and Kezmarsky. (*Id.* ¶ 108.) On June 7, Plaintiffs Bussinelli and Hebert were interviewed by Defendants Wysocki and Kezmarsky. (*Id.* ¶ 109.) Interviews consisted of approximately ten questions. (*Id.* ¶ 110.)

On June 9, Wysocki informed Lt. O'Hara of his promotion to Chief of Police. (*Id.* ¶ 112.) Wysocki informed Bussinelli of O'Hara's promotion on June 12, explaining that his promotion was "solely on the basis of Lt. O'Hara's interview and nothing more." (*Id.* ¶ 114.) On June 15, Bussinelli and Cherven met with Wysocki and Kezmarsky to discuss the interview process. (*Id.* ¶ 125.) Kezmarsky said that the selection process was subjective, without any objective scoring system for the candidates, and that Wysocki made the selection of Lt. O'Hara because of what Wysocki said was O'Hara's "vision for the department." (*Id.* ¶¶ 125-29.) Additionally, Wysocki stated that no other factors like rank, merit, seniority, sick time, disciplinary action were used in considering candidates for the position. (*Id.* ¶ 129.)

On June 19, the Mahwah Town Council and Mayor held a meeting in which the Council confirmed Mayor Wysocki's appointment of Lt. O'Hara as Chief of Police for MPD. (*Id.* ¶ 132.) Following O'Hara's appointment, Bussinelli, who was in attendance, left the meeting and went to

4

his car in the parking lot. (*Id.* ¶ 133.) Councilman Donigian also left the meeting and told Bussinelli that Bussinelli was his choice for Chief and expressing his belief that he was "collateral damage for [his] relationship with Batelli." (*Id.* ¶ 135.) Donigian also told him that Wysocki did not give councilmembers any documents submitted by applicants, instead choosing O'Hara subjectively for his approach to "community policing." (*Id.* ¶¶ 142, 144-45.) Kezmarsky and Wysocki later accessed exterior security cameras on the Town Hall Building to observe Bussinelli and Donigian's conversation. (*Id.* ¶ 152.) On July 12, Bussinelli spoke with OEM Director Ray Roe, who told Bussinelli that there were rumors that only Blondin and O'Hara were considered for the position, and that Wysocki held a grudge against Batelli and Jaffe that extended to the three plaintiffs. (*Id.* ¶¶ 158-60.)

Plaintiffs first filed this complaint on October 26, 2023. (*See id.*) Count One alleges "Defendants, acting under the color of law, subjected Plaintiffs to the deprivation of their constitutional rights of freedom of association, freedom of speech, and equal protection and due process under the law in violation of 42 U.S.C. § 1983." (*Id.* ¶ 163.) Count Two alleges a parallel violation of the New Jersey Civil Rights Act ("NJCRA"). N.J. Stat. Ann. § 10:6-1 *et seq*. (*Id.* ¶¶ 174-75.) Count Three alleges that Defendants conspired against Plaintiffs to deprive them of their privileges and immunities in violation of 42 U.S.C. § 1985. (*Id.* ¶ 186.)

In lieu of an answer, Defendants moved to dismiss Plaintiff's claims under Rule of Civil Procedure 12(b)(6) for Plaintiff's failure to state a claim upon which relief may be granted. (ECF 5, MTD.) Plaintiffs filed a brief in opposition. (ECF 9, Opp.) Defendants filed a reply. (ECF 10, Reply.)

5

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III. ANALYSIS

Defendants assert that the Complaint fails to state a claim upon which relief may be granted. (*See* ECF 5, MTD.) Plaintiffs argue that they adequately pled a Section 1983 claim, a First Amendment retaliation claim, a Fourteenth Amendment claim, a New Jersey Civil Rights claim, and a Section 1985 claim. (*See* ECF 9, Opp.) The Court will address each claim.

**A. Group Pleading**

To begin, mere "conclusory allegations against defendants as a group" that "fail[] to allege the personal involvement of any defendant" are insufficient to survive a motion to dismiss. *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015). A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id*. When several defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct." *Falat v. Cnty. of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013). A complaint that contains "impermissibly vague group pleading" will be dismissed. *Id*.

Here, the Complaint makes no factual allegations specifically capturing liability of Defendants the Township of Mahwah, Ward Donigian, David May, Robert M. Ferguson, JanetAriemma, Kim Bolan, Michelle Crowe Paz, Jonathan S. Wong, or Ben Kezmarsky. The Complaint repeatedly makes legal conclusions regarding the involvement of these Defendants without specifying facts as to the particular misconduct alleged or their specific role in the alleged misconduct. Further, the Complaint only invokes these Defendants in impermissibly grouped legally conclusory statements: "upon information and belief, all of the Defendant Council Members, Defendants Donigian, May, Ferguson, Ariemma, Bolan, Crowe Paz, and Wong . . ."

7

(*See* ECF 1, Compl. ¶¶ 137-140.) This style of pleading fails to place individual defendants on notice of the particular claims against them. The Complaint otherwise lacks any factual allegations to state any claim as to the Township, Donigian, May, Ferguson, Ariemma, Bolan, Crowe Paz, and Wong. The factual allegations against Defendant Kezmarsky relay his involvement in the interview process but specify that he was not the decisionmaker. (*Id.* ¶¶ 99, 101, 104, 108-10, 122, 125-27.) As such, the Complaint lacks factual allegations establishing each element of the claims alleged to sufficiently impose liability upon each named defendant. *See Galicki*, 2015 WL 3970297, at *2. Accordingly, the Court dismisses the Township of Mahwah, Ward Donigian, David May, Robert M. Ferguson, Janet Ariemma, Kim Bolan, Michelle Crowe Paz, Jonathan S. Wong, and Ben Kezmarsky from this action without prejudice.

### B. Section 1983 and NJCRA: Counts One and Two

Count One of the Complaint states "[t]he foregoing actions of Defendants, acting under the color of the law, subjected Plaintiffs to the deprivation of their constitutional rights of freedom of association (First Amendment), freedom of speech (First Amendment), and equal protection and due process under the law (Fourteenth Amendment) in violation of 42 U.S.C. Section 1983." (ECF 1, Compl. ¶ 163.) Plaintiffs' opposition brief specifies that they intended to bring a Section 1983 claim, a First Amendment retaliation claim, a Fourteenth Amendment claim, a New Jersey Civil Rights claim, and a Section 1985 claim. (*See* ECF 9, Opp.)

Section 1983 allows a plaintiff to bring a claim for certain violations of his or her constitutional rights.[3] To state a claim for relief under Section 1983, a plaintiff must allege the

---

[3] Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

8

defendant: (1) violated a right secured by the Constitution or laws of the United States; and (2) the alleged deprivation was committed or caused by a person acting under color of state law. *Mikhaeil v. Santos*, 646 F. App'x 158, 161-62 (3d Cir. 2016) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Civil claims for deprivation of or interference with a person's rights guaranteed by the laws and constitutions of New Jersey and the United States can be asserted by way of the NJCRA. N.J. Stat. Ann. § 10:6-1 *et seq.*; *see Gormley v. Wood-El*, 93 A.3d 344, 358 (N.J. 2014) ("Section 1983 applies only to deprivations of federal rights, whereas [the NJCRA] applies not only to federal rights but also to substantive rights guaranteed by New Jersey's Constitution and laws."). Because the NJCRA is interpreted analogously to Section 1983, this Court's Section 1983 analysis controls Plaintiffs' NJCRA claims as well.[4] *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (noting that the NJCRA "was modeled after 42 U.S.C. § 1983"); *Perez v. Zagami, LLC*, 94 A.3d 869, 875 (N.J. 2014) (stating that the NJCRA is "a state law analogue to Section 1983") (footnote omitted).

### 1. First Amendment Retaliation

A First Amendment retaliation claim requires a public employee to allege two elements: "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Fenico v. City of Phila.*, 70 F.4th

---

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

[4] The NJCRA provides that:
[a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2(c).

151, 162 (3d Cir. 2023). A defendant may defeat a plaintiff's retaliation claim by demonstrating that "the same action would have been taken even in the absence of the protected conduct." *Green v. Phila. Hous. Auth.*, 105 F.3d 882, 885 (3d Cir. 1997).

Under the first element, the question of whether a public employee's speech is protected by the First Amendment "is a question of law that nonetheless requires a robust factual basis." *Fenico*, 70 F.4th at 162. A public employee's speech is "protected" if the employee was speaking "as a private citizen" and if the statement involved "a matter of public concern." *Id*. Speech involves a matter of public concern when "it can be fairly considered as relating to any matter of political, social or other concern to the community, as opposed to a purely private intraoffice grievance." *Id.* at 163. If the public employee's speech was "made pursuant to his [official] duties . . . [as] part of what he was employed to do," it will not be considered protected First Amendment speech, and a claim of retaliation must fail. *Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006). If the plaintiff shows that his or her speech was made as a private citizen about a matter of public concern, the Court must then apply the particularized balancing test to determine if "the employee's interest in speaking outweigh[ed] the government's interest in promoting workplace efficiency and avoiding disruption." *Fenico*, 70 F.4th at 166 (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)).

Here, all the allegations as to Plaintiffs' protected interactions and speech that occurred regarding Defendant Wysocki that led to the alleged retaliation took place pursuant to official duties. *See Garcetti*, 547 U.S. at 413. In particular, the allegations involve Cherven, as Wysocki's supervising officer, placing Wysocki on a Performance Improvement Plan (ECF 1, Compl. ¶¶ 76-77); Plaintiffs arresting a friend of Wysocki's for DWI (*Id.* ¶ 84); Plaintiffs arresting the same individual for a second DWI at a later date (*Id.* ¶ 86); Plaintiffs' involvement in arresting a

10

Mahwah firefighter and "close personal friend" of Wysocki (*Id.* ¶ 88); two Plaintiffs' involvement in the arrest of a son of a Mahwah firefighter, which angered Wysocki (*Id.* ¶¶ 89-90); Bussinelli's contentious interaction when investigating a complaint made by Wysocki (*Id.* ¶ 91); Hebert and another officer catching Wysocki in a "compromising position," (*Id.* ¶ 92); and Cherven asking Wysocki to remove his truck, which had a large sign negative to the then-mayor, from Mahwah Township property. (*Id.* ¶ 94.) These allegations delineate actions taken pursuant to Plaintiffs' official duties in the MPD and foreclose a First Amendment retaliation claim. The Court accordingly dismisses this claim.

### 2. Fourteenth Amendment Claim

Defendants assert that Plaintiffs failed to sufficiently allege either an equal protection claim or a due process claim. (ECF 5, MTD at 14-19.) Plaintiffs do not specify whether their Fourteenth Amendment claim is an equal protection claim or a due process claim. (ECF 9, Opp. at 21-27.) Because the Complaint makes no allegations as to a liberty or property interest, the Court will proceed to assess a cause of action for violation of the Fourteenth Amendment's Equal Protection clause.[5]

To state an equal protection claim under Section 1983, a plaintiff "must allege that a state actor intentionally discriminated against him because of his membership in a protected class." *Lande v. City of Bethlehem*, 457 F. App'x 188, 192 (3d Cir. 2012). The complaint must allege "the existence of purposeful discrimination" by "demonstrat[ing] that [plaintiff] received different treatment from that received by other individuals similarly situated." *Shuman v. Penn Manor Sch.*

---

[5] While the standards for equal protection and due process are similar, *see Mech. Contractors Ass'n of N.J., Inc. v. New Jersey,* 541 F. Supp. 3d 477, 493 (D.N.J. 2021), plaintiffs do not explicitly assert a liberty or property interest here that would require the Court to engage in a due process analysis. *See Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 141 (3d Cir. 2000) (holding that plaintiff's tenured public employment was not a fundamental property interest entitled to substantive due process protection).

11


*Dist.*, 422 F.3d 141, 151 (3d Cir. 2005). To state a class-of-one claim, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

Defendants argue that Plaintiffs' Section 1983 equal protection claim must be dismissed because Plaintiffs have not sufficiently alleged that they experienced disparate treatment on the basis of a protected class or sufficiently alleged a "class-of-one" theory. The Court agrees. There are no allegations that Plaintiffs belong to a suspect class or that Plaintiffs were treated differently absent rational basis for the difference in treatment.

Plaintiffs argue that the elements of an equal protection claim and a class-of-one claim do not apply to a First Amendment retaliation claim. (ECF 9, Opp. at 21-27.) The Court agrees. Plaintiffs go on to argue that Plaintiffs would satisfy a "stigma-plus" test because they were "unjustly denied the right to a position." (ECF 9, Opp. at 26.) Confusingly, the "stigma-plus" test referenced in two pages of Plaintiffs' opposition brief is a claim arising from a *due process* claim for deprivation of a *liberty* interest in reputation. Plaintiffs seem to lack clarity as to different causes of action under the Fourteenth Amendment and otherwise failed to specify allegations as to either claim in their Complaint. In any case, the Complaint fails to state a claim for relief under the First Amendment or the Fourteenth Amendment. Accordingly, Plaintiffs' Section 1983 and NJCRA claims fail in concert. The Court dismisses Counts One and Two without prejudice.

### C. Section 1985: Count Three

Additionally, Plaintiffs' bald assertion of a "conspiracy" among the Defendants to deny Plaintiffs' constitutional rights does not state a claim for relief under Sections 1983, 1985, or 1986. A plaintiff pleading a civil rights conspiracy cannot rest on bare accusations, but must instead

plead facts showing actual agreement between the alleged conspirators and concerted action towards the object of the conspiracy.[6] *See, e.g., Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008); *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) ("the bare allegation of an agreement is insufficient to sustain a conspiracy claim"); *Desposito v. New Jersey*, No. 14-1641, 2015 WL 2131073, at *14 (D.N.J. May 5, 2015) (showing that two parties' actions had the same result is insufficient to show conspiracy, which requires a showing of actual agreement and concerted action). As such, the conspiracy claim under Section 1985 is dismissed without prejudice.

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF 5) is **GRANTED**. The Complaint (ECF 1) is dismissed without prejudice. Within sixty (60) days, Plaintiffs may file an amended complaint addressing the deficiencies identified in this Opinion. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: José R. Almonte, U.S.M.J.
     Parties

---

[6] Plaintiffs do not provide sufficient facts to state conspiracy claims under Sections 1985 or 1986. *See Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) ("[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."); *see also Clark v. Clabaugh*, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994) ("[T]o maintain a cause of action under § 1986, the plaintiffs must show the existence of a § 1985 conspiracy.").