**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GUIDO BUSSINELLI, SCOTT CHERVEN, and KEVIN HEBERT,<br><br>*Plaintiffs*,<br><br>v.<br><br>TOWNSHIP OF MAHWAH; JAMES WYSOCKI, individually and in his official capacity; WARD DONIGIAN, individually and in his official capacity; DAVID MAY, individually and in his official capacity; ROBERT M. FERGUSON III, individually and in his official capacity; JANET ARIEMMA, individually and in her official capacity; KIM BOLAN , individually and in her official capacity MICHELLE CROWE PAZ, individually and in her official capacity; JONATHAN S. WONG, individually and in his official capacity; BEN KEZMARSKY, individually and in his official capacity; XYZ CORP., INC.; JOHN DOES (1-10); and JANE DOES (1-10),<br><br>*Defendants*. | Civil Action No. 23-21519<br><br>**OPINION**<br><br>April 15, 2025 |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendants' Township of Mahwah, James Wysocki, Ward Donigian, David May, Robert M. Ferguson III, Janet Ariemma, Kim Bolan, Michelle Crowe Paz, Jonathan S. Wong, and Ben Kezmarsky (collectively, "Defendants") motion to dismiss Guido Bussinelli, Scott Cherven, and Kevin Hebert's (together, "Plaintiffs") Amended Complaint (ECF 22, "FAC"). (ECF 25, "Def. Mot.") Plaintiffs opposed the motion. (ECF 26, "Opp.") Defendants filed a reply. (ECF 27, "Reply.") The Court has decided this motion upon

the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

This suit arises from a dispute over the selection of a new Chief of Police for the Township of Mahwah. Plaintiffs are employees of the Mahwah Police Department ("MPD") who each interviewed but were ultimately not selected for the position of Chief of Police. (FAC ¶¶ 17-19, 123-24.) Plaintiffs claim that they were subjected to a "sham interview process" that failed to consider their seniority, rank, and experience. (*Id.* ¶¶ 119, 147.) Plaintiffs allege that they were not seriously considered because of their close association with former Police Chiefs James Batelli and Stephen Jaffe, and because of their contentious relationship with their former coworker James Wysocki, the current Mayor of Mahwah. (*Id.* ¶¶ 92, 119, 120.)

Plaintiffs Bussinelli, Herbert, and Cherven began their careers with the MPD as patrol officers in 1995, 1999, and 1997, respectively. (*Id.* ¶¶ 31, 44, 57.) Over the next twenty years the MPD continuously promoted Plaintiffs, who all rose the ranks of the department. (*Id.* ¶¶ 34, 37, 40, 43, 47, 50, 53, 56, 60, 63, 66-67.) Plaintiffs now occupy the positions of Executive Officer, Captain, and Detective Lieutenant at the MPD, respectively. (*Id.* ¶¶ 43, 56, 67.) Defendant Wysocki was a patrol officer with the MPD from 1985 until he retired in 2010. (*Id.* ¶ 68.) The Chief of Police in Mahwah during Wysocki's tenure at the MPD was James Batelli. (*Id.* ¶ 69.) Plaintiffs, known as "Batelli's boys," had close professional and personal relationships with Chief

---

[1] The facts and procedural history are drawn from the Amended Complaint (ECF 22) and documents integral to or relied upon by the FAC. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the complaint are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Batelli and maintain that Defendant Wysocki conversely had a "strained relationship" with the Chief because of Wysocki's "poor performance as a Patrol Officer within the Department." (*Id.* ¶¶ 69, 83-84.) Plaintiffs contend that there was a divide in the MPD between Plaintiffs—and those associated with Batelli—and officers like Wysocki "who did not like Chief Batelli." (*Id.* ¶ 71.) Plaintiffs had several negative interactions with Wysocki both during his tenure with the MPD as well as after Wysocki's retirement.[2]

Defendant Wysocki was elected as a Councilman for the Township of Mahwah in 2016 and then elected Mayor of Mahwah in 2020. (*Id.* ¶¶ 86, 95.) In 2019 Chief Batelli retired as Chief of Police and was succeeded by Captain Stephen Jaffe. (*Id.* ¶ 91.) As a Councilman, Defendant Wysocki voted against the promotion of Captain Jaffe to Chief of Police. (*Id.* ¶ 16.) When Jaffe retired four years later in 2023, he endorsed Plaintiffs Bussinelli and Cherven to replace him as Chief of Police in email to Defendant Ben Kezmarsky, the Township's Business Administrator. (*Id.* ¶¶ 29, 111-112.) Defendant Wysocki, now Mayor, listed the job posting for Chief of Police in early June 2023. (*Id.* ¶ 117.) All three Plaintiffs interviewed for the position. (*Id.* ¶ 123-24.) The interviews were conducted by Defendants Wysocki and Kezmarsky and consisted of approximately ten questions. (*Id.* ¶ 125.)

---

[2] In 2009, Plaintiff Cherven, as Defendant Wysocki's supervising officer, placed Wysocki on a Performance Improvement Program, which Wysocki complained was due to Cherven's association with Batelli. (FAC ¶¶ 72-73.) On another occasion, the Plaintiffs arrested a friend of Wysocki's for DWI, which Wysocki criticized. (*Id.* ¶ 78.) Plaintiffs also arrested this individual for a second DWI at a later date, again prompting complaints from Wysocki. (*Id.* ¶ 79.) Plaintiffs were involved in the arrest a Mahwah firefighter who was a "close personal friend" of Wysocki, as well as the arrest of the son of a Mahwah firefighter. (*Id.* ¶¶ 81-82.) Both events "angered" Wysocki. (*Id.*) In 2014, Plaintiff Hebert and another officer caught Wysocki in a "compromising position." (*Id.* ¶ 84.) In 2016, Plaintiff Cherven asked Wysocki, who was running for Township Counsel at the time, to remove his truck from Township property because it had a large sign that projected negative information about the then-mayor. (*Id.* ¶ 86.) Wysocki claimed that this removal was because of Chevren's close alignment with Chief Batelli. (*Id.*)

On June 9, Mayor Wysocki informed Lt. Timothy O'Hara of his promotion to Chief of Police. (*Id.* ¶ 128.) On June 12 Mayor Wysocki explained to Plaintiff Bussinelli that his decision was "solely on the basis of Lt. O'Hara's interview and nothing more." (*Id.* ¶ 131.) On June 15, Plaintiffs Bussinelli and Cherven met with Defendants Wysocki and Kezmarsky to discuss the interview process. (*Id.* ¶ 143.) Kezmarsky reported that the selection process was subjective, without any objective scoring system for the candidates, and that Wysocki selected Lt. O'Hara because of his "vision for the department." (*Id.* ¶¶ 144-46.) Wysocki stated that no other factors like rank, merit, seniority, sick time, disciplinary action were considered, and that "Lt. O'Hara's interview blew him away." (*Id.* ¶ 147.) On June 19, the Mahwah Town Council and Mayor held a meeting where the Council unanimously confirmed Mayor Wysocki's appointment of Lt. O'Hara as Chief of Police. (*Id.* ¶ 151.)

Plaintiffs first filed their complaint on October 26, 2023. (ECF 1, "Compl.") Count One alleged "Defendants, acting under the color of law, subjected Plaintiffs to the deprivation of their constitutional rights of freedom of association, freedom of speech, and equal protection and due process under the law in violation of 42 U.S.C. § 1983." (*Id*. ¶ 163.) Count Two alleged a parallel violation of the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1 *et seq*. (*Id.* ¶¶ 174-75.) Count Three alleged that Defendants conspired against Plaintiffs to deprive them of their privileges and immunities in violation of 42 U.S.C. § 1985. (*Id.* ¶ 186.) In lieu of an answer, Defendants moved to dismiss Plaintiff's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 5, "MTD.") This Court granted Defendants' motion on August 12, 2024 in an Opinion dismissing Plaintiffs' complaint without prejudice and permitting Plaintiffs to file an amended complaint within sixty days. (ECF 19, "Aug. 2024 Op.")

On September 7, 2024, Plaintiffs filed an Amended Complaint asserting the same claims stated in the original complaint. (FAC ¶¶ 177-183, 185-190, 192-201, 203-213.) Defendants now move to dismiss the Amended Complaint on the same grounds, alleging that it suffers from the same deficiencies as the original complaint and is therefore subject to dismissal under 12(b)(6) for failure to state a claim upon which any relief may be granted. (Def. Mot. at 6.)

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id*. at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If,

after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III.    ANALYSIS

Defendants assert that the Amended Complaint fails to state a claim upon which relief may be granted and ask this Court to dismiss the Amended Complaint in its entirety. (Def. Mot. at 8.) Plaintiffs argue that they have adequately pled a First Amendment retaliation claim and Fourteenth Amendment due process claim pursuant to 42 U.S.C. § 1983, a corresponding NJCRA claim, and a conspiracy claim pursuant to 42 U.S.C. § 1985. (Opp. at 5-6.) The Court will address each of Plaintiffs' claims in turn.

#### A. Section 1983 and NJCRA

42 U.S.C. § 1983 ("Section 1983") provides a remedy for individuals whose federal constitutional rights have been violated by persons or entities acting under the color of state law. *See Cooper v. Cape May Cnty. Bd. of Soc. Servs.*, 175 F. Supp. 2d 732, 742–43 (D.N.J. 2001). To state a claim for relief under Section 1983, a plaintiff must allege that the defendant: (1) violated a right secured by the Constitution or laws of the United States; and (2) the alleged deprivation was committed or caused by a person acting under color of state law. *Mikhaeil v. Santos*, 646 F. App'x 158, 161-62 (3d Cir. 2016) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

The NJCRA "is a state law corollary to 42 U.S.C. § 1983—it creates a private right of action for the violation of civil rights secured under the New Jersey Constitution."[3] *Armstrong v.*

---

[3] The NJCRA provides that "[a]ny person who has been deprived of any substantive rights, privileges or immunities secured by the Constitution or laws of this State by a person acting under color of law, may bring a civil action for damages." N.J. Stat. Ann. § 10:6-2(c).

*Sherman*, No. 09-716, 2010 WL 2483911, at *5 (D.N.J. June 4, 2010). For this reason, "[t]his district has repeatedly interpreted NJCRA analogously to § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (collecting cases). Thus, "the Court will analyze Plaintiffs' NJCRA claims through the lens of § 1983." *Id.*

Plaintiffs claim that Defendants, acting under the color of state law in their capacity as public employees of New Jersey, violated Plaintiffs' constitutional rights to freedom of speech and association, as well as their due process rights, when they appointed and confirmed Lt. O'Hara as Chief of Police. (Opp. at 6.) Plaintiffs allege that they engaged in protected First Amendment speech about the political candidacy of Defendant Wysocki after he retired from the MPD and that Defendants' decision not to promote Plaintiffs was retaliation for this speech and for their association with Chief Batelli.[4] (FAC ¶¶ 177, 180.) Plaintiffs also allege that Defendants violated Plaintiff's "liberty or property interest in their employment with the Defendant Township of Mahwah and their reputations as police officers" when Defendants "den[ied] one of them the promotion to Chief of Police." (*Id.* ¶¶ 186, 188.) Defendants argue that none of Plaintiffs' "newly minted allegations" rise to the level protected speech under the First Amendment, and that Plaintiffs cannot bring a viable substantive due process claim because they cannot establish reputational damage nor deprivation of any other right or interest. (Def. Mot. at 16, 29.)

1. **First Amendment Retaliation**

---

[4] If a public employee's speech is made pursuant to his official duties, it is not protected First Amendment speech, and a claim for retaliation must fail. *See Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006). In its prior Opinion, this Court found that Plaintiffs' allegations "delineate actions taken pursuant to Plaintiffs' official duties in the MPD and foreclose a First Amendment retaliation claim." (Aug. 2024 Op. at 9.) The Court does not disturb its previous holding and will address only the new allegations regarding protected speech/activity beyond the scope of Plaintiffs' official duties.

The First Amendment protects statements by public officials on matters of public concern. *Pickering v. Board of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 573 (1968). To succeed on a First Amendment retaliation claim, a public employee must allege two elements: "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Fenico v. City of Phila.*, 70 F.4th 151, 162 (3d Cir. 2023). A defendant may defeat a plaintiff's retaliation claim by demonstrating that "the same action would have been taken even in the absence of the protected conduct." *Green v. Phila. Hous. Auth.*, 105 F.3d 882, 885 (3d Cir. 1997).

Under the first element, the question of whether a public employee's speech is protected by the First Amendment "is a question of law that nonetheless requires a robust factual basis." *Fenico*, 70 F.4th at 162. A public employee's speech is "protected" if the employee was speaking "as a private citizen" and if the statement involved "a matter of public concern." *Id*. Speech involves a matter of public concern when "it can be fairly considered as relating to any matter of political, social or other concern to the community, as opposed to a purely private intraoffice grievance." *Id.* at 163.

The Supreme Court has found speech that relates solely to an employee's own employment matter is not protected by the First Amendment, including grievances regarding "working conditions, pay, discipline, promotions, leave, vacations, and terminations." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 391 (2011). The Supreme Court has been clear that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 138-39, 147

(1983) ("Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the state.")  In the Third Circuit, "it is well-settled that 'speech disclosing public officials' misfeasance is protected *while speech intended to air personal grievances is not.*'"  *Cooper*, 175 F. Supp. 2d at 744 (quoting *Swineford v. Snyder Cnty.*, 15 F.3d 1258, 1270 (3d Cir. 1994) (emphasis added)).

    The additional facts pleaded in the Amended Complaint demonstrate that Plaintiffs were speaking as employees upon matters of personal interest, and therefore Plaintiffs fail to establish that they were engaged in a constitutionally protected activity.  *See Connick*, 461 U.S. at 139.  Plaintiffs newly allege that they "openly discussed at work and off duty that Defendant Wysocki was only running for Township Council in an effort to torment then Chief Batelli" and that Defendant Wysocki commented that Plaintiffs were "pro-Batelli boys."  (FAC ¶¶ 87, 70.)  Plaintiffs concede the "narrow realm of employee speech" but argue nonetheless that they were speaking as private citizens on a matter of public concern when they openly discussed their opposition to Wysocki's political candidacy, which they argue is a "matter[] of political, social, or other concern to the community."  (Opp. at 10-11) (quoting *Javitz v. Cnty. Of Luzerne*, 940 F.3d 858, 866 (3d Cir. 2019)).

    It strains credulity to argue that Plaintiffs' personal views and objections to Wysocki's political candidacy is a matter of public concern.  Plaintiffs' speech here is nothing more than a "private intraoffice grievance" and therefore does not enjoy constitutional protection.  *Fenico*, 70 F.4th at 163.  The Amended Complaint contains no factual support for the assertion that Plaintiffs were speaking on a matter of public concern, and binding precedent requires Plaintiffs to sufficiently detail facts to survive a motion to dismiss.  *See Bell Atl. Corp.*, 550 U.S. at 544 ("a

9

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotations and citations omitted).

Because the Amended Complaint does not sufficiently establish that Plaintiffs engaged in a protected activity, Plaintiffs' claim must fail as a matter of law. The Court dismisses Count One.

### 2. Fourteenth Amendment Due Process

Plaintiffs assert a Fourteenth Amendment substantive due process claim for damage to their reputations from being stigmatized by Defendants as "Batelli's boys." (Opp. at 13.)[5] Plaintiffs argue that the "stigma-plus" test applies and that they have adequately pled their claim under this theory. (*Id.*) Defendants argue that Plaintiffs' substantive due process claim concerning their reputation fails a matter of law. (Def. Mot. at 29.) The Court agrees.

Under the "stigma-plus" test a plaintiff must establish both "a stigma to his reputation plus deprivation of some additional right or interest." *Dee v. Borough of Dunmore*, 549 F.3d 225, 233-34 (3d Cir. 2008) (quoting *Hill v. Borough of Kuztown*, 455 F.3d 225, 235 (3d Cir. 2006)). In the context of public employment, "the 'stigma' is the creation and dissemination of a false and defamatory impression and the 'plus' is generally termination." *Warner v. Twp. of South Harrison*, 885 F. Supp. 2d 725, 744 (D.N.J. 2012) (citing *Hill*, 455 F.3d at 236 and *Codd v. Velger*, 429 U.S. 624, 628 (1977)). To establish the first prong of the stigma-plus test, a plaintiff must allege that the purportedly stigmatizing statements were (1) made publicly and (2) were false. *Hill*, 455 F.3d at 236. Where an employee cannot demonstrate any false statements that were made publicly nor a termination from employment, there cannot be a legally viable claim for relief under the

---

[5] In their original complaint, Plaintiffs asserted an equal protection claim under the Fourteenth Amendment that this Court dismissed. (Aug. 2024 Op. at 12.) Plaintiffs now assert their Fourteenth Amendment claim under a theory of substantive due process. (Opp. at 29.)

substantive due process clause. *Pasqua v. County of Hunterdon*, 721 Fed. Appx. 215, 219-220 (3d Cir. 2018). Furthermore, "[t]o prevail on a substantive due process claim under § 1983, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000).

Here, Plaintiffs are unable to establish either prong of the "stigma-plus" test. *See Dee*, 549 F.3d at 233. The Amended Complaint repeats generalized assertions reflecting Plaintiffs' belief that Defendants "stigmatized Plaintiffs as 'Batelli's boys'" and that their reputation was damaged due to "the stigma of being known as 'Batelli's boys,'" without any further factual enhancement. (FAC ¶¶ 187, 188.) These sweeping conclusory statements are not a substitute for factual pleadings. *See Ashcroft*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Any public or false statement that would qualify as a stigma to their reputation is absent from the Amended Complaint. (*See* Opp. at 35-37.) The court cannot be led to speculate or infer harm that is not articulated with the sufficiency required by *Twombly* and *Iqbal*. 550 U.S. 544; 556 U.S. 662. Because Plaintiffs have not identified any public or false statements that Defendants made to defame them, their claim fails under the first prong of the "stigma-plus" test. *See Hill*, 455 F.3d at 236.

Plaintiffs are also unable to identify a deprivation of a right or liberty interest to sufficiently plead a claim under the substantive due process clause. Plaintiffs claim they were subject to a "sham interview and selection process for the position of Chief of Police." (FAC ¶ 152.) But Plaintiffs provide no factual support for this assertion in their Amended Complaint.[6] *See Ashcroft*,

---

[6] Plaintiffs assert that Defendant Wysocki failed "to review the candidates' resumes, proposals, or personnel files" or include Council members in the interview process. (FAC ¶ 203.) Nothing

556 U.S. at 687 (Courts are not required "to credit a complaint's conclusory statements without reference to its factual context"). The only cognizable interest Plaintiffs identify is a property interest in their employment. (Opp. at 14.) However, Plaintiffs were not terminated from and thus deprived of their employment; they were simply not selected for a promotion. *See Hill*, 445 F.3d at 234 n.12 ("for a property interest to be protected for purposes of *substantive due process,* it must be 'fundamental' under the United States Constitution") (emphasis in original). It is well established that "public employment is not a fundamental right entitled to substantive due process protections." *Id.* (citing *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 142-43 (3d Cir. 2000)). The Court is unaware of any fundamental right that a public employee has to a promotion under the Constitution.

Plaintiffs rely on case law that is inapplicable to their instant claim. (Opp. at 14-16.) In *Stana v. School District of City of Pittsburgh*, the Third Circuit found a violation of a schoolteacher's *procedural* due process rights when her name was removed without a hearing from an eligibility list to be hired by a public school in Pittsburgh. 775 F.2d 122, 128 (3d Cir. 1985). Similarly, in *Unger v. National Residents Matching Program*, the plaintiff asserted a *procedural* due process claim after Temple University closed the dermatology residency program that plaintiff was scheduled to enter after completing medical school. 928 F.2d 1392, 1393 (3d Cir. 1991) (affirming district court's dismissal for failure to state a claim).

Plaintiffs cannot escape the precedent in this Circuit which makes clear that "[i]n the public employment context…[t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" *Hill*, 445 F.3d at 236. Because Plaintiffs were not

---

about this process offends any rule or precedent this Court is aware of, and certainly does not constitute a "sham interview process."

terminated from the MPD, but rather were not selected for a promotion, they have failed to state a claim under the substantive due process of the Fourteenth Amendment.[7]  Accordingly, Plaintiffs' Section 1983 and NJCRA claims fail in concert. The Court dismisses Counts Two and Three of the Amended Complaint.

### B. Section 1985 Conspiracy

Additionally, Plaintiffs' bald assertion of a "conspiracy" among the Defendants to deny Plaintiffs' constitutional rights does not state a claim for relief under Section 1985. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."). "[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws;[8] (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).  Plaintiffs make no argument in their brief concerning whether they have satisfied the four elements of a conspiracy claim.  (*See* Opp. at 17-19.)

---

[7] It is not lost on the Court that the three Plaintiffs each claim a property interest in promotion to a position occupied by one person.  The Court agrees with Defendants that "it defies logic to conclude that each of these three Plaintiffs had a legitimate individual entitlement to a single appointment when not all of the Plaintiffs could have held the position at once." (Def. Mot. at 29.)

[8] Plaintiffs have failed to plead any facts to demonstrate that Defendants were motivated by race or some other class-based invidious discrimination. *Lake*, 112 F.3d at 685 ("The Supreme Court clarified that the reach of section 1985(3) is limited to private conspiracies predicated on 'racial, or perhaps otherwise class based, invidiously discriminatory animus.'") (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

A plaintiff pleading a civil rights conspiracy cannot rest on bare accusations but must instead plead facts that show an actual agreement between the alleged conspirators and a concerted action towards the object of the conspiracy. *See, e.g., Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (affirming dismissal of Section 1985 claim because there was "no evidence" to infer an understanding or agreement among defendants); *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) ("the bare allegation of an agreement is insufficient to sustain a conspiracy claim"); *Desposito v. New Jersey*, No. 14-1641, 2015 WL 2131073, at *14 (D.N.J. May 5, 2015) (demonstrating that two parties' actions had the same result is insufficient to show conspiracy, which requires a showing of actual agreement and concerted action).

Plaintiffs allege that Defendants Wysocki and Kezmarsky "agreed to rig the selection for Chief of Police by conducting a sham interview process" and that the remaining Defendants "agreed to vote for Lt. O'Hara" in furtherance of this conspiracy. (FAC ¶¶ 203-207.) However, the Amended Complaint is devoid of facts that show a concerted action taken by Defendants to deprive Plaintiffs of a constitutional or federal right. Defendant Wysocki was entitled by state statute and local ordinance to select a new Chief of Police, a decision that the Township Council unanimously confirmed.[9] *See* N.J. Stat. Ann. § 40A:14-118; Township of Mahwah, N.J. Municipal Code § 2-4.4. Plaintiffs have not alleged any facts to indicate that Defendants conspired to rig the selection process or confirmatory vote by the Township Council; the alleged facts indicate only

---

[9] Defendants argue that "the statute governing a Township form of government gives the Mayor the sole discretion to appoint Chief of Police…for any reason whatsoever, even a political one." (Def. Mot. at 22.) Defendants' assertion of the Mayor's unilateral authority does not comport with the plain language of the statute. *See* N.J. Stat. Ann. § 40A:14-118 ("The ordinance may provide for the appointment of a chief of police and such members, officers and personnel as shall be deemed necessary"); Township of Mahwah, N.J. Municipal Code § 2-4.4 ("The Mayor shall appoint the director of each department with the advice and consent of the Council.")

14

that Defendant Wysocki, after interviewing multiple candidates, "passed over two captains and the highest-ranking Lieutenant" for another applicant. (FAC ¶ 131.)

Additionally, as discussed above, Plaintiffs cannot establish a cognizable right or interest that Defendants have violated or denied them, which is an essential element of a conspiracy claim. *See White v. Brown*, 408 Fed. Appx. 595, 599 (3d Cir. 2010) (holding that district court properly dismissed conspiracy claim where plaintiff failed to establish an underlying violation of a constitutional right). Finally, Plaintiffs cannot establish that they are part of "a specific, identifiable class against whom the defendants can have discriminated." *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006).[10] Plaintiffs have therefore failed to present sufficient facts to plead the elements of a conspiracy claim under Section 1985. Accordingly, Plaintiffs' conspiracy claim (Count Four) is dismissed.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (ECF 25) is **GRANTED**. A court may dismiss a claim with prejudice when leave to amend would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). A finding that leave to amend would be futile is proper when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 514 (E.D. Pa. 2018) (Baylson, J.) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Because Plaintiffs have failed to identify any constitutional violations, amending their

---

[10] "The world 'class' unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with." *Id.* (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993)).

15

complaint for a second time would be futile, and the Court therefore dismisses the Amended Complaint (ECF 22) with prejudice.  *See, e.g., Morton v. Arnold*, 618 F. App'x 136, 142-43 (3d Cir. 2015) (affirming district court's dismissal of plaintiff's due process and conspiracy claims under Sections 1983 and 1985 because complaint contained only conclusory allegations that failed to state plausible claim for relief); *Abreu v. SCI Greene State Corr. Inst.*, No. 23-01092, 2023 WL 2772136, at *9 (E.D. Pa. Apr. 4, 2023) (dismissing claims with prejudice that did not identify any constitutional violation and thus failed to state a claim under either Section 1983 or 1985).  An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    José R. Almonte, U.S.M.J.
       Parties